The cause stood continued nisi for advisement, and at the March term, 1808, in Suffolk, the opinion of the Court (except the Chief Justice, who, having been of counsel with the plaintiff, did not sit in the cause, and except, also, Thatcher, J., who did not hear the argument) was delivered as follows, by
Sewall, J.
The plaintiff, assignee ,of Edmund Bartlet, a bankupt, demands damages for certain goods alleged to have been converted by the defendant. To prove his property, he has endeavored to show that the goods in question belonged to the bankrupt at the time of the bankruptcy ; and so became, by force of the statute of the United States, and of an assignment pursuant thereto, the property of the plaintiff. The defendant sets up a title to these goods under a judgment recovered by the Newburyport Marine Insurance Company against Edmund Bartlet, rendered by the Court of Common Pleas, July term, 1802, an execution sued out thereon, and .evied by the defendant, a deputy sheriff, on the goods in question on the 21st of September, 1802; and by virtue, whereof he afterwards sold the same goods, to satisfy the said execution and judgment.
The controversy, as to the principal question in it, is to be de cided upon the inquiry, pursued at the trial, and upon the argument since upon the point of law reserved ; whether a certain transfer of the rigging of a vessel, made by the bankrupt to his father, September 17th, 1802, was an act of bankruptcy. If it was, the plaintiff’s title, as assignee, takes effect from that time, and the subsequent levy under the execution by the defendant was a conversion of the plaintiff’s goods.
The Court having agreed in their opinion upon the construction of the statute of bankruptcy, as it applies in this inquiry, I shall confine myself, in stating the decision, to the question, [ * 510 ] * whether the transfer and removal of certain goods of Edmund Bartlet, on the 17th of September, 1802, was, in the sense of the law, an act of bankruptcy; and in considering this question, it will be taken as established, that the transfer was in itself without consideration, and, as against the creditors of Edmund Bartlet, fraudulent and void.
*445 The statute of the United States, to establish a uniform system of bankruptcy throughout the United States, provided, 11 that from, &.c., if any merchant, &c., shall, with intent unlawfully to delay or defraud his creditors, secretly convey his goods out of his house, or conceal them to prevent their being taken in execution, or make, or cause to be made," any fraudulent conveyance of his lands or chattels, &c., every such person shall be deemed and adjudged a bankrupt.”
It is contended for the plaintiff, that the act in question was an act of bankruptcy ; first, as a fraudulent conveyance of his chattels; and, secondly, as a secret removal of goods from the house, or a concealment of them, to prevent their being taken in execution.
The transfer in this case was by a bill of parcels, a writing without seal, with a receipt for the amount, and a delivery of the articles sold by this memorandum.
This conveyance was not, in the opinion of the Court, a conveyance of chattels in the technical sense, or according to the legal construction of the clause cited from the statute. Whatever may be the loose and popular sense, or possible applications, of the term conveyance, the legislature are not understood to speak in an inde terminate manner; especially if that construction would violate any general principle of jurisprudence. For, in making a statute, the legislature are understood to refer themselves to existing customs and rules, or, in other words, when using technical terms, to employ them in a precise and technical sense. The same term conveyance is used in speaking of the transfer of lands and of chattels; and different meanings must be given to the same word to apply it to the transaction in question.
In this respect the variance from the British statute operates against the construction contended for by the plaintiff. There this act of bankruptcy is described by the terms grant *or conveyance of lands or goods. And if the term con- [ * 511 ] veyance were less technical than grant, they might be applied respectively to the subjects, reddendo singula singulis. But in the statute of the United. States, the same word is made use of, to describe a transfer of both species of property. And it is well understood, that respecting lands there can be no voluntary transfer of them, but by deed; an instrument operative and effectual between the parties, independently of a consideration, or an actual delivery of the article conveyed.
The popular sense of a term, in opposition to the technical, is not to be adopted, where manifest inconveniences would be incurred. Now, if the construction was to be regulated by every possible import of the term conveyance, as applied to goods or chattels, must in the nature *446 a transaction, to which very heavy forfeitures and important consequences are attached by the statute (28).
However, it is not necessary to justify the construction adopted by the Court, by any abstract reasoning. It is obvious that the legislature of th.e United States, in their statute of bankruptcies, were studious to employ the phrases of the English statutes upon the same subjects, with a view undoubtedly to the aid afforded by English decisions in their construction ; and where the same wolds are employed, without additional words to vary the construction, the legislature may be understood to have implicitly recognized the decisions which have determined their application and import. To decide the question by a reference to those authorities, removes every doubt that can arise from the popular use of a term employed by the legislature.
In the cases cited from Burrows’s Reports, and in short throughout the cases, where any occasion to notice the distinction occurs, it may be said rather to be taken as a settled maxim, in the construction of the English bankrupt laws, than to have been directly decided, that colorable sales and transfers of the notes, goods, and personal property of a bankrupt, although void as against the creditors of the bankrupt, do not amount to an act of bankruptcy, unless executed by a fraudulent deed or conveyance.
[*512] *Upon the second question respecting the concealment and removal of the goods, we can have no aid from English decisions in construing this part of the statute of the United States. This addition to the enumerated acts, which severally constitute a bankruptcy, was probably occasioned, as was observed in the argument for the defendant, by a resolution in the case of Cole vs. Davies &f Al., reported by Lord Raymond, which is, that if a trader, hearing that a writ of fieri facias was issued against him, to the intent to preserve his goods from being levied in execution, clandestinely conveys them out of his house, and conceals them privately, that does not amount to an act of bankruptcy.
The statute of the United States provides that secretly conveying his goods out of his house, or concealing them, to prevent their being taken in execution, shall be an act of bankruptcy.
In the case at bar, the rigging for a vessel built by Edmund Bartlet, and previously mortgaged by him, and which had come to the hands of his father, was sold and delivered to him, and was taken from the warehouse of the son by the father’s orders, and finally was used upon the vessel for which it had been prepared. *447 This sale and removal was occasioned by the mutual fears of the parties that the rigging might be taken in execution, if it remained with Edmund.
At the time when this sale and removal happened, it could not have been done with the intent to defeat the execution, it not being a removal of all, or of any large proportion of his goods. And it is against this intent, that the statute may be construed to provide; or if it guards against an intent to preserve a particular species of goods, the connection of the words seems to confine the unlawful act to the removal or concealment of household goods, or goods particularly connected with a man’s station, or credit in business. But, however this may be, our opinion is, that the secrecy and concealment of goods, which constitutes an act of bankruptcy, distinct from a fraudulent conveyance of them, must be an actual, not a constructive concealment of them, by the bankrupt himself, or by his procurement, while they continue, in his intentions, his own goods.
* All these circumstances are wanting in the case at [ * 513 ] bar, in this view of it; and upon the whole our opinion is, that the transaction in question between Edmund Bartlei and his father, on the 17th of September, 1802, did not, in any respect, amount to an act of bankruptcy.
As to the question which has been made, of the validity of the sale of several articles not specified by the sheriff in his advertise ments, we are all of the opinion, that for this injury, if any has been sustained, the remedy must be by an action upon the case against the sheriff for a false return; for as the return is, it must be understood that his proceedings were in due form of law.

Costs for the defendant.

 [Dudley vs. Sumner, 5 Mass. 472.—Ed.]