### THE STATE *v.* DANIEL FARRAND.

1. An instrument in writing not under seal, whereby M acknowledges to have received of S four bushels of rye, for which he is to return to the said S, four and a half bushels, the said rye to be sowed on shares between said

S and M, on the farm of M; said M not to convey or sell to any person without this restriction, " that S is to have his pay out of said M's part," is not *an assurance* within the meaning of the 60th Section of the act for the punishment of crimes, (*Rev. Laws* 260,) for the unlawfully or maliciously tearing of which a man may be indicted.

2. When an instrument is described by name in the indictment, the instrument set out in the indictment or produced in evidence must correspond therewith.

*Drake,* Prosecuting Attornery of Morris, for the state.

*Halsey,* for the defendant.

The opinion of the court was delivered by

EWING, C. J. The indictment in this case charges that the defendant having in his possession a certain instrument of writing, being an assurance of certain goods and chattels, to wit, of four and a half bushels of rye. did wilfully, unlawfully and maliciously tear the same by tearing off the name of the subscribing witness.

The instrument as set forth in the indictment is as follows : " This day received of Beaman Stickle, four bushels of seed rye, to be sowed on the Hiler farm, where I now live, for which rye I am to return to the said Stickle four and a half bushels on or before the first day of August next, the said rye is to be sowed on shares, between the said Stickel and Benjamin G. Moore, on said farm, *the More* not to sell or convey to any person or persons without these restrictions, that is to say, the said Beaman Stickel is *to* have his pay out of the said Moore's part.

September 26, 1823.

*Benjamin G. Moore.*

*Elizabeth* her ⋈ *Baker.*
mark.

The indictment is founded on the 60th section of the act for the punishment of crimes, *Rev. Laws* 260, which makes

it a misdemeanor to "wilfully, unlawfully and maliciously tear, cut, burn, or in any way whatever destroy," divers instruments of writing, and among them "any transfer or assurance of money, stock, goods, chattels, or other property whatsoever."

The first question to be examined is whether the instrument set forth in the indictment, is " an assurance of goods and chattels," within the aforesaid section.

The term " assurance," as used in the statute and applied to goods and chattels is peculiar and anomalous. It is believed that no other instance of its relation to goods and chattels can be found in any publication, except where used as synonymous with "insurance." No such instance is cited in the brief furnished us on the part of the state.

It would perhaps suffice on this occasion to examine and test the word assurance, by its technical signification, because I am inclined to think it must be taken as so used by the legislature. BLACKSTONE says, " Terms of art or technical terms must," in the interpretation of laws, " be taken according to the acceptation of the learned in each art, trade or science;" 1 *Bl. Com.* 60. BACON states the rule thus, " If a statute make use of a word, the meaning of which is well known at the common law, the word shall be understood in the same sense it was understood at the common law;" *Bac. Abr. tit. statute, I.* 4. In the case of *Rust* v. *Cooper, Cowp.* 629, and *Martin* v. *Pewtress,* 4 *Bur.* 2477, the terms, " any fraudulent grant or conveyance " in the English statute of bankruptcy, were held not to include a bill of sale of goods, because the latter was not a deed, and the alienation must be by deed to come within the statute. In the case of *Livermore* v. *Bagley,* 3 *Mass. Rep.* 487, a transfer of certain chattels by a bill of parcels, a writing without seal, with a receipt for the amount, and the delivery of the articles was held not a *conveyance* of chattels in the technical sense or according to the legal construction of the clause of the act of Congress respecting bankruptcies. " What-

ever " says the Court, " may be the loose and popular sense or possible applications of the term conveyance, the legislature are not understood to speak in an indeterminate manner, especially if that construction would violate any general principle of jurisprudence. For in making a statute, the legislature are understood to refer themselves to existing customs and rules, or in other words when using technical terms, to employ them in a precise and technical sense." But I do not deem it indispensable in this case to decide whether the signification of the term, assurance, is to be drawn from common use or from legal and technical acceptation, for taken in either way, this instrument is not an assurance of goods and chattels within the meaning of the statute.

1. It may be pretty confidently asserted, that such an instrument was never in common language called an assurance of goods and chattels, nor was such application ever given to it in any work of good, or perhaps of any, reputation. It is not enough to say one signification of the term assurance is a promise, and this instrument contains a promise. The legislature meant to describe an instrument by name, and the true question is, whether such instrument is in common language ever called by such name.

2. In technical phraseology, the evidence of a contract, agreement or promise to deliver at a future day the subject of such contract, agreement or promise is never denominated an assurance. JACOB, defines an assurance of lands to be " where they are conveyed by deed;" 1 *Jac. L. D.* 157, *vox assurance.* BLACKSTONE says, " A translation or transfer of property being thus admitted by law, it became necessary that this transfer should be properly evidenced." " The legal evidences of this translation of property are called the *common assurances* of the kingdom, whereby every man's estate is *assured* to him, and all controversies, doubts and difficulties are either prevented or removed;" 2 *Bl. Com.* 294. The terms " conveyance " and " assurance," are used

as convertible or synonymous by the soundest and most accurate writers and judges. Thus LORD COKE: "conveyances which are used for common assurances of land," &c., 2 *Co.* 74, *a.* A common recovery "is now by usage and custom become a common assurance and conveyance of lands;" 5 *Co.* 41. CHIEF JUSTICE WILLES: a common recovery "is by consent and in nature of a common conveyance or assurance of lands," *Willes* 451. So also, *Willes* 448; *Shep. Touch.* 134, 164, 869; 2 *Bl. Com.* 344, 361; *Christ. note,* 365, 379, 382; 5 *John. Rep.* 59.

If then the instrument set forth be not an assurance of goods or chattels, the indictment is incongruous and inconsistent and the judgment should be arrested. Where an instrument is described by name, the instrument set out in the indictment or produced in evidence must correspond therewith. An indictment which charges a defendant with the forgery of a bill of exchange or bond, and setting it out, shews it to be a conveyance of land, or a promissory note, is vicious; *Archb.* 21, *Rex* v. *Jones ; Doug.* 100; 2 *Russel* 1485; 5 *John. Rep.* 236, 237.