## John O'Neil *vs.* Thomas Glover.

A petition for a warrant in insolvency against the estate of a debtor may be signed and sworn to by the attorney of the petitioning creditor.

An affidavit that the facts stated in a petition for a warrant in insolvency against a debtor are true, according to the best knowledge and belief of the party making it, is sufficient to justify the issuing of a warrant.

The doing by a debtor of any of the fraudulent acts enumerated in *St.* 1844, *c.* 178, § 9, is ground for proceedings in insolvency against him, without alleging or proving that he is insolvent.

It is no objection to issuing a warrant in insolvency against a debtor, that he has no creditor whose debts are not secured, except the petitioner.

A creditor's petition for a warrant in insolvency, which alleges that the debtor, within sixty days, and with intent to defraud the petitioner, "has concealed his property or some part thereof, to prevent its being attached or taken on legal process," is not so defective as to require the proceedings in insolvency to be quashed, after the petitioning creditor, by order of the commissioner, has filed a specification of the particular acts of concealment relied on.

Any act of a debtor, by which his true title and ownership of property are kept from the view of his creditors, if made with the intent to prevent its being attached or taken on legal process, is a concealment, within the meaning of *St.* 1844, *c.* 178, § 9.

A balance, if actually amounting to $100, of an account consisting of many disputed items, is a sufficient demand against a debtor to be the foundation of proceedings in insolvency against him under *Sts.* 1838, *c.* 163, § 19, and 1844, *c.* 178, § 9; although the creditor has commenced an action thereon.

The provision of the insolvent laws, which authorizes the issuing of a warrant to take possession of all the estate of a debtor, on the petition of a creditor, without a trial by jury on the facts alleged in the petition, is constitutional.

After proof of collusion between a debtor and one to whom he has conveyed property, conversations of the grantee with a third party, in the presence of the debtor, are admissible against the debtor to show fraudulent intent in the conveyance.

Petition to this court under the equity jurisdiction conferred by *St.* 1838, *c.* 163, § 18. The petition alleged that on the 2d of July 1855 Thomas Glover of London, England, by his attorney Richard Glover, presented to Francis Hilliard, Esquire, a commissioner of insolvency for this county, the following petition : " To Francis Hilliard, Esquire, commissioner of insolvency in and for the county of Norfolk, humbly shows, Thomas Glover, of London, in the Kingdom of Great Britain, gas meter manufacturer, that he is a creditor of John O'Neil, of Roxbury, in the said county of Norfolk, doing business or lately doing business as a commission merchant in Boston, in the county of Suffolk ; that your

petitioner's demand is provable against the estate of the said O'Neil, according to the provisions of the act for the relief of insolvent debtors and for the more equal distribution of their effects, and the ,acts in addition thereto ; that said demand amounts to one hundred dollars, and that the nature of said claim is exhibited in the account hereto annexed." [Then followed an account, consisting of many items, charging O'Neil with gas meters and proceeds of sales of meters received and not accounted for, and with overcharges for services, commissions and expenses, amounting in all to $4259.76.] " And your petitioner further represents, that the said O'Neil, with intent to defraud your petitioner, has concealed his property, or some part thereof, to prevent its being attached or taken on legal process ; and this he has done within the sixty days next preceding the day of the date of this petition. Wherefore your petitioner prays that a warrant may be issued to take possession of the estate of the said O'Neil, that the same may be seized and distributed according to law, and that such further proceedings may be had in the premises as the law in such case prescribes.

" Thomas Glover, by Richard Glover, his attorney."

" Commonwealth of Massachusetts. Norfolk, ss. July 2d 1855. Personally appeared the above named Richard Glover, and made oath that the facts set forth in the foregoing petition are true, according to his best knowledge and belief. Before me,

" Francis Hilliard, commissioner of insolvency."

That an order of notice was issued and duly served upon O'Neil, who appeared and moved to dismiss that petition, because it was not signed and sworn to by the petitioning creditor ; because the oath was insufficient in form ; because there was no allegation of the insolvency of O'Neil ; because no facts were stated which, if proved, would amount to a concealment ; and because the section of the statute, authorizing the proceedings, was unconstitutional and void ; but the commissioner overruled the motion, and the hearing proceeded.

That on the third day of the hearing, Glover, on motion of O'Neil, and by order of the commissioner, filed " as and for a statement of the facts of concealment of his property by the

said O'Neil, as alleged in the petition," a specification, "that the said O'Neil, well knowing the claim of the petitioner was about to be put in suit, and having contrived by continuance of negotiations to delay service of the writ to the last day of service for the then next term of the court, did withdraw from the Rockland Bank the balance of his account at said bank; did sell and transfer or did transfer certain stock standing in his name in the Roxbury Gas Company; did mortgage his household furniture; did pledge certain stock standing in the East Boston Gas Company for as large a proportion of its full value as he was able; did close his office in the city of Boston, and remove his effects therefrom; and otherwise in divers other ways and manners did evince his intention to conceal his property so that it might not be attached; and did by other acts unknown to the petitioner actually conceal his property so that none could be found by the officer in whose hands the petitioner placed a writ against the said O'Neil."

That against the objection of O'Neil that these facts would not, if proved, amount to a concealment, and that evidence of any other facts ought not to be received, the commissioner received evidence of the facts specified, and of others not set forth in the statement.

That James C. Hall, called as a witness by Glover for the purpose of proving that a transfer of stock by O'Neil to Albert Bowker was fraudulent, was allowed to testify to a conversation between Bowker and Richard Glover, which was not held at the time of the transfer, nor in the presence, hearing or knowledge of O'Neil.

That O'Neil filed a claim in set-off, containing many items of charges for extra commissions and loss of expected commissions and for services and expenses, amounting to $21,535; and Glover afterwards filed an amended statement of his claim, increasing the total to $6,296.42, and utterly denying the validity of O'Neil's claims in set-off.

That on the 24th of September 1855 the commissioner, after hearing the parties, issued a warrant against O'Neil; the first publication of notice was on the 4th of October follow-

ing; and the first meeting was called for the 17th of the same month.

That O'Neil verily believed that he was not indebted to Glover, but on the contrary Glover was indebted to him; and that on the 28th of May 1855 he had brought a suit claiming a balance due and attached Glover's property; and on the 19th of June Glover sued out a writ against him, and arrested him thereon, and held him to bail; and these suits were still pending, and embraced all matters in dispute between the parties; and that, excepting this disputed claim of Glover, he had no creditor who had a provable claim, and was indebted to no person, except to Sandford M. Hunt for $1000 borrowed money, for which Hunt was amply secured; that Hunt presented to the commissioner, during the hearing, a statement in writing that he had no desire to have insolvency proceedings instituted against O'Neil; that, before either of these suits was brought, Glover offered to settle on payment to him by O'Neil of $1000, and had since repeatedly urged such a settlement; and that O'Neil believed that the purpose of the proceedings in insolvency was to compel him to assent to Glover's terms of settlement.

That Glover offered in evidence before the commissioner two conveyances, one a transfer of stock in the Roxbury Gas Company to William B. Kingsbury, the other a mortgage of furniture to Hunt, under circumstances tending to show the intent, on the part of O'Neil, to prevent the property so conveyed from being attached; and contended that these conveyances amounted to a concealment of the property, although by the absence of a fraudulent intent on the part of the purchasers the conveyances were not fraudulent as to them; and the commissioner held that these conveyances did amount to a concealment.

That the withdrawal of a balance of account by O'Neil from the Rockland Bank, although it did not appear that the money withdrawn was not the property of O'Neil's wife, who was also a depositor in that bank; and a transfer to Bowker, by O'Neil, of certain stock of the East Boston Gas Company, as collateral security for a debt; and a transfer of certain shares of the

Roxbury Gas Company to John W. May; having been made under circumstances which, as Glover claimed, tended to show that they were made with intent to prevent the property from being attached, were held by the commissioner to amount to a concealment of the same.

The petition then denied that any balance was due from O'Neil to Glover, and represented that O'Neil was aggrieved by the proceedings before the commissioner, and prayed that the same might be stayed, for the reasons set forth in the motion to dismiss ; and also for the following reasons :

1st. Because the object of said proceedings was in fraud of the insolvent laws, and not to effect a distribution of O'Neil's property among his creditors, but to compel a settlement of the claims in dispute between O'Neil and Glover upon terms satis-factory to Glover.

2d. Because there was but one creditor having a provable claim, and no distribution of property could therefore be made among creditors.

3d. Because the evidence of Hall was improperly admitted.

4th. Because Glover's claim did not constitute a debt upon which a petition *in invitum* might be founded.

5th. Because the commissioner held the evidence of solvency offered by O'Neil to be immaterial.

6th. Because the facts set forth in Glover's specification would not, if proved, amount to a concealment; and because the facts proved did not amount to a concealment.

7th. Because in the trial of the issues raised in the insolvency proceedings O'Neil had not been allowed the benefit of a trial by jury.

8th. Because at the time of filing the petition before the com-missioner Glover had already commenced a suit for the same cause of action against O'Neil, and caused him to be arrested and held to bail, which suit was still pending.

The petition further prayed the court, if they should be of opinion that the statute was not unconstitutional by reason of its failure to provide for a trial by jury, and that proceedings ought not to be stayed for any of the reasons set forth, to direct

issues to be framed and submitted to a jury, and to order a temporary stay of proceedings before the commissioner.

Upon this petition a temporary injunction was granted, and an order of notice issued to Glover and to the commissioner to show cause why it should not be made perpetual.

Glover appeared, and filed an answer under oath, setting forth that all the points of law and fact raised or stated in the proceedings in insolvency were fully argued before the commissioner, and were maturely considered and a decision in writing made thereon by him, a copy of which was annexed to the answer; and further averred,

1st. That Glover never offered to settle the matters in controversy for $1000, and that all offers made by him were offers of compromise; and that the proceedings in insolvency were commenced by Glover in good faith, to obtain a fair distribution of the property of O'Neil among all his creditors.

2d. That Glover had a claim provable against the estate of O'Neil, which the commissioner on full hearing declared to be valid; and that the law does not limit proceedings in insolvency to cases where there are two or more creditors, and that until a meeting of creditors is called their number cannot be ascertained.

3d. That no illegal evidence was admitted before the commissioner, to which objection was made.

4th. That O'Neil had concealed his property to prevent it from being attached or taken on legal process, and thereby rendered himself liable to be proceeded against in insolvency.

5th. That upon the question whether or not a warrant shall issue, a debtor is not entitled to trial by jury.

6th. That O'Neil was at the time of the commencement of proceedings and now is indebted to sundry persons, and that he refused, after due notice, to produce his books of account, and thereby deprived Glover of the means of ascertaining the names of such creditors.

7th. That it was proved before the commissioner that both Bowker and Hunt held notes of O'Neil, and that O'Neil was under sundry liabilities to other parties, and largely indebted to

13 *

learned counsel, to whom he had transferred property standing in his name but actually belonging to Glover.

The opinion of the commissioner, annexed to this answer, contains an examination of all the questions raised upon the petition. The commissioner disallows the set-off of O'Neil, and finds that two items of Glover's account, exceeding $100, were admitted to be valid.

Upon the question whether O'Neil had concealed his property or any part thereof to prevent its being attached or taken on any legal process, the commissioner states that, immediately before the 19th of June, O'Neil had attachable property in his hands or ownership, but at the close of that day, when the writ of Glover was served upon him, such property had all passed to other persons, so far as to prevent its being attached, and with that intent. And upon a review of the evidence, the commissioner finds that O'Neil did the following acts on the 19th of June : He withdrew from the Rockland Bank twenty dollars deposited in his wife's name, being the balance of an account which had remained open since April. At his own request, he sold to Kingsbury eight shares in the Roxbury Gas Company, for a price less than he had ever offered them at before, although they had been for some time in the hands of his broker for sale. He handed to May a certificate, dated June 15th, of two shares in the Roxbury Gas Company, saying that he thought May would be better satisfied if he had security for the payment of May's note for $200, which note O'Neil had borrowed three or four days before, offering to give security, which May had then declined ; and some days after the 19th of June, O'Neil cancelled the note and gave him the certificate absolutely, telling him that he had not used the note, and wished to retain him as his counsel. He borrowed $1,000 of Hunt; and although Hunt demanded no security, and would have made the loan without any, he mortgaged his household furniture to Hunt, and gave his note payable in eighteen months, but with a verbal understanding that the money should be repaid on demand ; Hunt then suspecting no fraudulent purpose.

The commissioner also finds that on the 14th of May 1855

O'Neil borrowed of Bowker $500, and gave his note therefor, which has never been paid, and pledged as collateral security forty shares in the East Boston Gas Company, which had never before been sold at so low a price; and this arrangement was afterwards changed by O'Neil's executing an instrument of sale, taking a bond, dated May 14th, to reconvey within a certain· time. The time when these instruments were really executed was left in some doubt; but the commissioner, considering all the evidence, " and especially the testimony of Hall, who fixes the time in the middle of June, and in presence of O'Neil admitted to Bowker that he had represented the transaction to Richard Glover as a mere loan, because he really so considered it, and this after being present at repeated interviews between Bowker and O'Neil," was satisfied that the formal transfer was made on or about the 19th of June.

The commissioner thereupon concludes that the conveyances to Kingsbury and Hunt were acts of concealment, upon the principle " that property may be concealed, within the meaning of the statute, by being changed into an unattachable form, the property still remaining the debtor's, although in a new shape;" and that the withdrawal of the deposit from the bank, and the transfers of stock to May and Bowker, " in the language of the court in *Livermore* v. *Bagley*, 3 Mass. 512, are cases of concealment by the bankrupt, while they continue, in his intentions, his own goods."

The commissioner further finds no reason to doubt the good faith of Glover, and that the evidence is not conclusive that he is the only unsecured creditor; and that that fact, if it were admitted, would constitute no sufficient reason for refusing to issue a warrant; seeing " no more reason why a debtor should be brought into insolvency by his creditors generally for preferring one, than by one for preferring all the rest."

The commissioner filed an informal answer to O'Neil's petition, not under oath, in which he stated more briefly the facts found and rulings made by himself, and referred to his opinion as explaining the grounds of his action in the premises.

O'Neil filed a replication to Glover's answer, denying that he

owed any thing to any other person except Hunt, and averring that no person attended at the long preliminary hearing, nor at the first meeting, as a creditor.

*R. Choate & J. W. May,* for the petitioner. 1. The statute makes it essential to the jurisdiction of the commissioner that the petition should be made by the " creditor," stating the facts, and the nature of his claim, and be " verified by oath." *St.* 1844, *c.* 178, § 9. This statute, giving the creditor the right to institute proceedings harsh in their nature, is to be construed in favor of the debtor. The natural construction is to require the security of the personal signature and oath of the creditor, who alone can be presumed to know the facts. Such is the practice under the English bankrupt acts of 5 G. 2, *c.* 30, § 23, and 5 & 6 Vict. *c.* 122, § 11. For analogous cases see Rev. Sts. *c.* 65, § 1; *c.* 67, § 7; *c.* 98, § 28; *Gould* v. *Gould,* 1 Met. 382; *Givens* v. *Taylor,* 6 Tex. 315. There is no instance, in England or the United States, in which a statute of this kind has been construed differently. The statutes of Massachusetts expressly provide that an oath may be made by another person in behalf of the party, when they so intend. Rev. Sts. *c.* 90, § 111. *Sts.* 1840, *c.* 87, §§ 1, 3; 1852, *c.* 312, § 10; 1854, *c.* 63; 1855, *c.* 249, § 1; *c.* 444, § 3. And the insolvent laws themselves expressly allow the oath of an attorney in some cases. *Sts.* 1851, *c.* 349, § 1; 1852, *c.* 189, § 1.

2. So the oath must be positive, and not merely to the best knowledge and belief of the person making it. *Sydnor* v. *Totman,* 6 Tex. 189. *Deupree* v. *Eisenach,* 9 Georgia, 598. *Tallman* v. *Bigelow,* 10 Wend. 420. 3 Dan. Ch. Pract. 1939. *Mattocks* v. *Tremain,* 3 Johns. Ch. 75. *Oldham* v. *Oldham,* 7 Ves. 410. *Hyde* v. *Whitfield,* 19 Ves. 342. *Franklin* v. *Underhill,* 2 Johns. 374.

3. The petition to the commissioner should aver the insolvency of the debtor. The statute, as its title states, is " for the relief of insolvent debtors " only, and the very section under which this petition was filed enumerates " causes for proceeding against an insolvent debtor." *St.* 1844, *c.* 178, § 9. Fraud does not advance the case, except so far as it tends to prove insolvency. *Shears* v. *Rogers,* 3 B. & Ad. 362. *Lush* v *Wilkinson,*

5 Ves. 387. *Kidney* v. *Coussmaker*, 12 Ves. 148. *St.* 6 G. 4, *c.* 16, § 3. At all events, evidence of the debtor's solvency should have been admitted, as bearing upon the question of intent.

4. There is no other creditor of O'Neil, having a provable claim ; and therefore the proceedings should be stayed, as one main purpose of the statutes concerning insolvent debtors, " the distribution of their effects," fails. To sustain these proceedings would be to place the whole of the debtor's property in the hands of his sole creditor, to be distributed between himself and the officers of the court, with no one to protect the debtor's interests. The debtor cannot appeal from the allowance of any claim ; only the assignee can appeal, and he might be the single creditor himself, or some friend chosen by him, who would not appeal. *St.* 1838, *c.* 163, § 4. Nor would the creditor prosecute the suit brought against him by the debtor ; for that would be prosecuting a suit against himself. Such a construction was not contemplated when the statute was passed. Report of Commissioners, Cutler's Insolvent Law, (ed. 1853,) 172.

5. The petition to the commissioner does not state facts amounting to a concealment, with the precision required by the statute, and heretofore practised. *St.* 1844, *c.* 178, § 9. Cutler's Insolvent Law, 182. Such precision is required in analogous cases. Rev. Sts. *c.* 98, § 28. *Stewart* v. *Brown*, 16 Barb. 367. *Frost* v. *Willard*, 9 Barb. 440. *Stewart* v. *Hargrove*, 23 Alab. 429.

6. The facts proved do not amount to a concealment within the statute. A man cannot be said to conceal what he has sold, what is no longer his own. An open sale of property, or transfer upon the record, or any other disposition of it, which shows where the property has gone, is no concealment, within the statute. *Livermore* v. *Bagley*, 3 Mass. 487. If " concealment " had this broad signification, the enumeration in the statute of cases of removal, procured attachments, fraudulent conveyances, and the like, would have been unnecessary.

7. Glover's claim is not a debt upon which a petition *in invitum* may be founded ; not belonging to either of the classes of

debts particularly described, nor even being a balance of account to which the creditor can make oath; but the question, whether any thing is due, depending upon the result of the adjustment of a mutual account between the parties, consisting of numerous disputed items on both sides, requiring the intervention of a jury; no settlement having been made between the parties, and the creditor not even attempting to state the balance due him, nor allowing for the set-off. Eden Bankr. Law, (2d ed.) 42, 48. *Ex parte Bowes,* 4 Ves. 168. *Marshall* v. *Sharland,* 15 Ad. & El. N. R. 1051. *Green* v. *Bicknell,* 8 Ad. & El. 701. *Utterson* v. *Vernon,* 3 T. R. 539, and 4 T. R. 570. *Ex parte Broadhurst,* 2 De Gex, Macn. & Gord. 953. The judicial interpretation of the English statutes is a guide in construing ours. *Commonwealth* v. *Hartnett,* 3 Gray, 450. And this debt would not be provable, without stating the set-off, or striking a balance, under *St.* 1838, *c.* 163, § 3. Nor was the claim one upon which he could then bring suit; for a suit already brought for the same cause of action was still pending.

8. The statute authorizing proceedings in insolvency *in invitum* is unconstitutional and void, because it does not allow the debtor a trial by jury, in a " controversy concerning property,' which is not a proceeding in admiralty, nor a " case in which it has heretofore been otherways used and practised." Declaration of Rights, art. 15. U. S. Constitution, amendment 7. *Parsons* v. *Bedford,* 3 Pet. 433. 3 Greenl. Ev. § 264. *Charles River Bridge* v. *Warren Bridge,* 6 Pick. 398, and 7 Pick. 366. This statute authorizes the commissioner, after deciding all the questions of fact, as well as of law, arising upon the petition, to issue a warrant to seize all the debtor's property, and take it out of his control, without appeal. *Briggs* v. *Parkman,* 2 Met. 258. *Judd* v. *Ives,* 4 Met. 401. *Snow's case,* 3 Woodb. & M. 430. And in some cases it also deprives him of his personal liberty. *St.* 1838, *c.* 163, § 23. The right to apply to this court in equity under § 18 is only after the debtor is stripped of his property, and depends entirely upon the discretion of the court.

Cases of deceased insolvent debtors are voluntary proceedings, instituted by the executor or administrator representing the

estate ; and in them, as in other probate cases, the rights of appeal and of trial by jury are expressly secured. Rev. Sts. *c.* 68, §§ 2, 8 ; *c.* 66, § 19 ; *c.* 83, §§ 34, 43, 46. So in cases of commitment of lunatics. *Sts.* 1837, *c.* 228, § 1 ; 1838, *c.* 73, § 1. And upon charges of fraud against a poor debtor. Rev. Sts. *c.* 98, § 27.

By an attachment on mesne process, the debtor's property is not appropriated, but merely held to respond to a trial by jury.

9. The purpose of the petition to the commissioner was not to effect a distribution of property, but rather to coerce the debtor into an adjustment of the claims between him and Glover, upon Glover's own terms. And this is ground for setting aside the proceedings. *Ex parte Bourne,* 2 Glyn & J. 137. *Ex parte Christie,* 2 Dea. & Chit. 465, 488. *Ex parte Johnson,* 2 Mont., Dea. & De Gex, 678. *Ex parte Budd,* 1 Mont., Dea. & De Gex, 436.

10. The evidence of Hall was improperly admitted, the conversation being *res inter alios acta.*

*P. W. Chandler & S. E. Guild,* for the respondent, cited to the point that the oath to the petition was sufficient in form, *Bland* v. *Drake,* 1 Chit. R. 165 ; *Cresswell* v. *Lovell,* 8 T. R. 418 ; 1 Tidd's Pract. (1st Am. ed.) 154 ; to the point that a debtor, committing an act of bankruptcy, might be proceeded against, though not actually insolvent, *Hassells* v. *Simpson,* 1 Doug. 89 *note ;* to the point that the facts proved amounted to a concealment, within the statute, *In re Wilson,* 6 Law Reporter, 272 ; *In re Pearce,* 6 Law Reporter, 261 ; *Robinson* v. *Wadsworth,* 8 Met. 71 ; *Penniman* v. *Cole,* 8 Met. 496 ; *St.* 1846, *c.* 168, § 1 ; *Harlow* v. *Tufts,* 4 Cush. 448 ; and to the point that Glover's claim was a good petitioning creditor's debt, *Betton* v. *Allen,* 9 Cush. 382 , *Kelton* v. *Phillips,* 3 Met. 62.

THOMAS, J. This is a petition brought under the *St.* of 1838, *c.* 163, § 18, giving this court jurisdiction in equity in cases arising under the insolvent laws. The object of the petition is to enjoin the commissioner of insolvency from further proceeding in the cause, and to vacate the acts already done.

Involuntary proceedings in insolvency were commenced against the present petitioner, in the name of Thomas Glover, claiming to be a creditor of O'Neil to the amount of one hundred dollars and upwards, and alleging that O'Neil had fraudulently concealed his property to prevent its being attached or taken on legal process. To the validity of the proceedings before the commissioner, both as to matters of form and of substance, several objections are made. We proceed to consider them in their natural order. 1st. As to matters of form.

The petition was signed " Thomas Glover, by Richard Glover his attorney," and sworn to by Richard Glover; the form of oath being that the facts set forth in the petition "are true, according to his best knowledge and belief."

It is said the petition is defective, 1st, because it is not signed and sworn to by the petitioner in person; 2d, because the oath is insufficient.

1. We think the statute does not require that the petition should be signed or sworn to by the creditor in person. The language of the statute is " any of his creditors, whose claims provable against his estate amount to the sum of one hundred dollars, may apply by petition, stating the facts and the nature of said claims, verified by oath." *St.* 1844, *c.* 178, § 9. The language of the statute to which the last is an addition is, " any creditor, having a demand," &c., " may apply, by petition, setting forth the facts, and praying that a warrant may issue." *St.* 1838, *c.* 163, § 19. Upon a petition so filed, notice is in all cases to be given to the debtor; and if, upon a hearing before the commissioner, the facts set forth in the petition shall appear to be true, a warrant is to issue. *St.* 1844, *c.* 178, § 9. *Buck* v. *Sayles,* 9 Met. 459. *Thompson* v. *Snow,* 4 Cush. 121. On such hearing, the allegations made in the petition, though on oath, are not to be received as evidence. They constitute ground only for notice to the debtor, and an examination and hearing of the cause. *Jordan, petitioner,* 9 Met. 292.

Where the subject matter for the action of a judicial tribunal is exclusively within the knowledge of the party moving for its judgment, or where the law has reposed in such party a per-

sonal trust and confidence, the party must petition in person. But except in cases falling within these principles, unless the language of the statute in terms requires it, we see no good reason for the restriction. On the other hand, it is apparent that great embarrassment might result from it. The case at bar presents an apt illustration. The creditor resides in London. In relation both to the debt due, and the acts of insolvency, his agent and attorney here had the knowledge of the facts. To require the petition to be sent to London for the signature and verification of the creditor would not only subject him to unnecessary expense; but the necessary delay might, it is obvious, defeat the very object of the petition.

We are not to presume that the commissioner or judge of insolvency will act without discretion in the matter, or without inquiring as to the authority of the person assuming to act for the creditor, and his means of knowing the facts he assumes to verify.

2. Nor does the objection to the form of the oath strike us as sound. In relation to the acts to establish concealment, fraudulent conveyance, or other act of insolvency, it is apparent that they would seldom be within the personal knowledge of the petitioning creditor; and if, as to the acts of insolvency, as well as to the debt itself, the commissioner or judge has this form of verification, by one who has reasonable opportunity of knowing the facts, we think it presents a basis for notice and inquiry, reasonable in itself, and fairly within the provision of the statute.

3. It is said that this petition is defective because it contains no allegation of the insolvency of the debtor. Such allegation is, we think, not necessary. And it is not necessary to allege such insolvency, because it is not necessary to prove it.

Our insolvent law is, in substance and effect, and especially in its proceedings *in invitum,* a system of bankruptcy. Upon the doing by the debtor of any of certain fraudulent acts, he commits an act of insolvency or bankruptcy, and furnishes legal ground for declaring him insolvent and for the sequestration of his estate.

VOL. V.        14

The language of the statutes is clear and explicit. *Sts.* 1838, *c.* 163, § 19 ; 1844, *c.* 178, § 9. The latter section is as follows : " In addition to the several causes for proceeding against an insolvent debtor, enumerated in the statute of 1838, *c.* 163, § 19, if any person shall remove himself, or his property, or any part thereof, from the Commonwealth, with intent to defraud his creditors, or shall conceal himself to avoid arrest, or his property, or any part thereof, to prevent its being attached or taken on any legal process, or make any fraudulent conveyance or transfer of his property, or any part thereof, then any of his creditors, whose claims, provable against his estate under this act and the aforementioned acts or any of them, amount to the sum of one hundred dollars, may apply by petition."

4. A question of practical difficulty might have arisen if the case had shown the existence of but a single creditor. It was upon this ground, we understand, the temporary injunction was granted. But it now appears there are other creditors, and though their debts are secured by mortgage, they may, under the provisions of the statute, release their security, and prove their claims, or, under the order of the judge, sell the property held as collateral security, and make proof of the balance. *St.* 1838, *c.* 163, § 3. Without deciding what would be the result if the petitioning creditor was the sole creditor, we think it plain that upon proof of the existence of the debt due the petitioner, and of the existence of other creditors, so that a distribution might be made, and of the commission of any one of the fraudulent acts enumerated in the statute, the warrant must issue.

5. It is further objected to the validity of the proceedings before the commissioner, that there was neither allegation in the petition, nor proof before the commissioner, of any facts which constitute concealment of property, within the intendment of the statute of 1844, *c.* 178, § 9.

As to the question of form, we think the defect was cured by the specification filed at the adjournment, which was ordered upon the motion of the petitioner in this case, the respondent in the original proceeding.

6. What facts, under the insolvent law, would constitute a concealment of property is a question of greater difficulty. The words of the statute have just been cited. By the concealing of property to prevent its being attached or taken on any legal process, is physical concealment meant, a literal secreting or hiding of the property only; or does it also include the doing of any acts by which, in substance and effect, the title of the party to the estate real or personal shall be concealed, his property in the chattel or land or stock so covered up, that it cannot be reached by the process of the law?

We think the latter is the true construction of the statute. Concealment is the doing of an act, whether by way of conveyance or transfer, by which the true title and ownership of the debtor is kept from the view of the creditor, when done with the intent and purpose of preventing its being attached or taken on execution. Such interpretation is within the reason, as well as the words of the statute. As if A should transfer his stock in a bank to B, as collateral security for a debt, and, having paid the debt, should still keep it in the name of B, with the view and for the purpose of preventing the attachment or seizure on execution by his creditors, there would be a concealment of his property in the stock. The plain object of the statute is to give a more effective remedy than that by attachment, to get at that which is covered up or changed into such form that the ordinary process of w cannot reach it. The narrower construction of the statute would render it comparatively useless for any practical purpose.

The case of *Livermore* v. *Bagley*, 3 Mass. 487, to which the petitioner refers, arose under the provision of the first bankrupt law of the United States, the language of which is much less comprehensive than that of the act of 1844. It was, "if any merchant," &c., "shall, with intent unlawfully to delay or defraud his creditors, secretly convey his goods out of his house, or conceal them to prevent their being taken in execution." U. S. St. 1800, *c.* 19, § 1, 2 U. S. Sts. at Large, 20, 21. This provision, as the court intimate, seems to be limited to the removal or concealment of household goods, or goods particularly connected with a man's station or credit in business. But

whether so restricted or not, the words "secretly convey his goods out of his house or conceal them" clearly refer to a physical asportation, and to chattels capable of being so carried. The insolvent law uses a word of much larger import, "property," which includes real as well as personal; all property which could be attached or taken on any legal process, in respect to which a physical or actual concealment, as distinct from a constructive one, the concealment of one's title or inter est in it, would be wholly insensible.

To the suggestion, that a man cannot be said to conceal what he has sold, what is no longer his own, a sufficient answer is that the petition refers to what has been, and not merely to that which exists—to acts done within ninety days before the petition is filed. *St.* 1838, *c.* 163, § 19.

In this view of the law, and upon the facts disclosed in the very able and elaborate opinion of the commissioner, annexed to and made part of his answer, we think there was such concealment of his property by the debtor as would authorize the issuing of the warrant against him; the debt or claim of the petitioning creditor being satisfactorily established.

7. But it is further objected to the validity of these proceedings, that the claim of the petitioning creditor was not one upon which proceedings *in invitum* could be instituted. The considerations of expediency and convenience are certainly very strong, but the language of the statutes is clear and conclusive upon the point. *Sts.* 1838, *c.* 163, § 19; 1844, *c.* 178, § 9.

Under the statute, any claim may be the basis of proceedings *in invitum*, which is in its nature provable against the estate, and which is not secured by mortgage, pledge or lien. Whether the required amount was due is a question of fact to be heard before a single judge, but upon the report of the commissioner the debt of the petitioning creditor seems to be clearly established.

8. It is said the provisions of the *Sts.* of 1838, *c.* 163, § 19, and 1844, *c.* 178, § 9, are unconstitutional, because they do not secure to the debtor a trial by jury before the issuing of a warrant against him.

The obvious answer, we think, is that the proceeding, how-ever important, is in its nature preliminary. It does not finally determine the question of indebtedness, it does not deprive the debtor of his property or estate. It is, in form, and in substance, but a taking of the property of the debtor into the custody of the law for the security of his creditors. The objection would apply with equal force to a writ of replevin, or to a taking on mesne process or by foreign attachment.

9. The motive which leads the petitioning creditor to insti-tute proceedings in insolvency, the purpose he seeks to accom-plish by them, all the conditions of the statute being complied with, if they are open and are material, are clearly questions of fact, upon which we have no evidence.

10. We have had some difficulty in determining the compe-tency of the testimony of the witness Hall. The precise evi-dence of the witness is nowhere reported. But the ground upon which it is objected to, that it was a conversation held between third parties, and not in the presence of O'Neil, is neg-atived by the answer of the commissioner, which states that it was not only conversation in the presence of the debtor, but admitted only after proof of collusion between him and Bowker. Upon these facts we cannot say the evidence was wrongfully admitted.

The result is, the temporary injunction must be dissolved, and the                                           *Petition dismissed.*